610 F.2d 643
 Wesley C. SODERBACK, Plaintiff-Appellant,
v.
Admiral Owen W. SILER, Commandant of the United States Coast
Guard, Rear Admiral C. A. Richmond, District Commander,
Thirteenth Coast Guard District, Captain J. R. Meeker,
officer in charge of Marine Inspection for the Port of
Seattle, Captain John M. Duke, Commanding Officer Marine
Safety Office, Port of Portland, Defendants-Appellees.
 No. 77-3118.
 United States Court of Appeals,
Ninth Circuit.
 Dec. 6, 1979.
Rehearing Denied Jan. 14, 1980.
 
 Janice M. Stewart, Hardy, McEwen, Weiss, Newman & Faust, Portland, Or., argued for plaintiff-appellant; John R. Faust, Jr., Hardy, McEwen, Weiss, Newman & Faust, Portland, Or., on brief.
 Robert Frame, Asst. U. S. Atty., San Francisco, Cal., for defendants-appellees.
 Appeal from the United States District Court for the District of Oregon.
 Before COWEN,* Senior Judge, KILKENNY and HUG, Circuit Judges.
 COWEN, Senior Judge:
 
 
 1
 The appellant, Soderback, is a seaman, holding a merchant mariner's document issued by the United States Coast Guard. He brought this action in the district court pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701-706, to obtain judicial review of the Coat Guard's denial of his applications for two different merchant mariner officer licenses. Cross-motions for summary judgment were filed, and this appeal followed the district court's granting of the government's motion for summary judgment.
 
 
 2
 The issues presented for decision are: (1) Whether the lack of a formal evidentiary hearing in connection with the refusal to grant the two licenses denied Soderback due process of law; and (2) whether the denial of the licenses was arbitrary, capricious, or an abuse of discretion. We answer both questions in the negative and affirm the decision of the district court.
 
 I.
 
 3
 Soderback served aboard the USS BASHAW as a seaman and quartermaster from January 15, 1960 to May 12, 1962, a period of 2 years, 3 months and 28 days. The General Services Administration issued a transcript of this service on October 17, 1967.
 
 
 4
 In November 1967, the Officer in Charge of Marine Inspection in Portland, Oregon (OCMI Portland) issued to appellant a merchant mariner's document endorsed "ordinary seaman" and certified that plaintiff's sea service time aboard the USS BASHAW was for the period stated above.
 
 
 5
 In January 1968, the OCMI Portland issued appellant a merchant mariner's document endorsed "able seaman, any waters, 12 months, wiper" on which his sea service aboard the USS BASHAW was again certified as previously stated.
 
 
 6
 From August 19, 1968 to November 1969, Soderback served aboard merchant vessels as an able seaman and obtained an additional 9 months and one day of experience.
 
 
 7
 In September 1970, Soderback applied for a license as a third mate of ocean, steam and motor vessels of any gross tons. The mandatory service requirement for such a license is that the applicant has "(t)hree years' service in the deck department of ocean or coastwise steam or motor vessels * * *." 46 C.F.R. § 10.05-33(a)(1). He relied on his service in the Navy aboard the USS BASHAW, and in his application, he estimated that the vessel was at sea between 80 and 90 percent of the time he served aboard her. He listed his service aboard merchant vessels as 9 months and one day. As authorized by 46 C.F.R. § 10.02-13(a), the Coast Guard evaluated his service aboard the USS BASHAW at 80 percent. With this evaluation, his time of sea service was 4 months and 17 days short of meeting the 3-year requirement. Therefore, Soderback was issued a temporary non-renewable license as a third mate pursuant to 46 C.F.R. § 11.10-1. The temporary license was valid for 5 years, from November 27, 1970 to November 26, 1975, and was granted for the purpose of allowing him an opportunity to meet the minimum requirements for a regular license.
 
 
 8
 On December 29, 1970, OCMI Portland issued Soderback a merchant mariner's document endorsed "able seaman, any waters, unlimited, wiper" which had attached to it a transcript of sea service taken from discharges. The transcript listed Soderback's entire term of service aboard the USS BASHAW. During the 5-year period of his temporary license, Soderback accumulated an additional 3 months and one day of experience toward qualifying for the 3-year experience requirement for a regular license. When his license as a temporary third mate was about to expire in November of 1975, appellant attempted to renew it. The Officer in Charge of Marine Inspection in Seattle, Washington (OCMI Seattle) refused to renew it on the basis that 46 C.F.R. § 11.01-10(a) made licenses in temporary grades non-renewable. OCMI Seattle also denied Soderback a regular third mate license on the basis that Soderback still lacked the necessary 3 years of experience.
 
 
 9
 On May 3, 1976, after his license as a temporary third mate had expired, Soderback applied to OCMI Portland for a license as a "mate of freight and towing." One of the requirements for this license is set forth in 46 C.F.R. § 10.05-36(a)(3): "(s)ix months of the experience required shall have been acquired in the area for which application is made * * *." The application for this license was denied by OCMI Portland on the basis that the application showed only 3 months and 9 days of the required 6 months experience in the waters for which the application was made.
 
 
 10
 Soderback appealed the denials of the regular third mate license and the mate of freight and towing license, first, to the District Commander of the Thirteenth Coast Guard District and then to the Commandant of the Coast Guard. The denials were affirmed, whereupon Soderback filed his complaint in the district court. The matter was referred to a magistrate who made findings and recommended that the defendant's motion for summary judgment be granted. The district court adopted the magistrate's findings and entered summary judgment for the defendant.
 
 II.
 
 11
 Soderback's principal contention in this appeal is that the refusal of the Coast Guard to grant him the licenses denied him the opportunity to participate in his chosen occupation and was, therefore, an infringement of a liberty interest of sufficient magnitude that entitled him to a due process hearing.[1] Since the Supreme Court handed down Board of Regents v. Roth,408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), it is well established that one who claims a deprivation of "liberty" must demonstrate that the action complained of imposed "a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities." 408 U.S. at 573, 92 S.Ct. at 2707. The Supreme Court in Roth also made it clear that the deprivation of a liberty interest means something more than that a person "simply is not rehired in one job but remains as free as before to seek another." 408 U.S. at 575, 92 S.Ct. at 2708.
 
 
 12
 In this case, Soderback relies heavily on Homer v. Richmond, 110 U.S.App.D.C. 226, 292 F.2d 719 (D.C.Cir.1961), but that case is inapposite.[2] There, the Coast Guard denied applications for licenses as radio telegraph operators to two persons on the basis of charges that they were members of the Communist Party. Clearly these charges involved the kind of "stigma" that is referred to in Roth. However, Soderback's licenses were not denied on grounds to which any stigma is attached and he does not so contend. The action taken by the Coast Guard was not based on charges of dishonesty, crime, or immorality.
 
 
 13
 Moreover, the fact that Soderback did not obtain the licenses does not disqualify him from engaging "in any of the common occupations of life * * *." Meyer v. Nebraska, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923). On the contrary, Soderback holds a seaman's document and is still able to seek employment in his basic occupation as a merchant mariner. When he obtains the required experience as a merchant seaman, he is free to apply again for the licenses previously denied him. The statutes, 46 U.S.C. §§ 221-249, authorize the Coast Guard to issue a variety of licenses to merchant mariners. What Soderback sought and did not obtain were higher and more remunerative ratings in his basic occupation. His complaint is quite similar to that of the lawyer in Schwartz v. Thompson, 497 F.2d 430 (2d Cir. 1974), who was denied a promotion to a higher position. Closely analogous also are Haimowitz v. Univ. of Nevada, 579 F.2d 526 (9th Cir. 1978) (faculty member whose contract was not renewed on the recommendations of the chairman of his department); Schirck v. Thomas, 486 F.2d 691 (7th Cir. 1973) (school teacher who was not re-employed because of her failure to coordinate her work with that of other teachers), and Blair v. Board of Reg. of State Univ. & Com. Col. Sys., Tenn., 496 F.2d 322 (6th Cir. 1974) (teacher's contract which was not renewed on the ground that he failed to meet minimum standards in his relationships with his students). In each of these cases, the courts held, as we hold here, that there was not a deprivation of a liberty interest, as contemplated in Roth, which entitled the complainant to a due process hearing.
 
 III.
 
 14
 On the merits, Soderback challenges the Coast Guard's denial of the two licenses on the ground that such action was arbitrary, capricious, and an abuse of discretion. Under the applicable statutes and regulations, the granting of licenses to seamen involves the exercise of discretion by the Coast Guard. Therefore, our review of the administrative determination is narrow and limited to deciding whether there was a rational basis for the actions of the Coast Guard. See Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); Udall v. Washington, Virginia and Maryland Coach Co., 130 U.S.App.D.C. 171, 398 F.2d 765 (D.C.Cir.1968).
 
 
 15
 With respect to the third mate license, the statute, 46 U.S.C. § 228, provides that the Coast Guard shall determine whether an applicant for a third mate license has presented satisfactory evidence of the knowledge, skill and experience to perform the duties that will be required of him. 46 C.F.R. § 10.02-13(a) specifically authorizes the Coast Guard to evaluate service by seamen in the Armed Services to determine the equivalence to sea service on merchant vessels. As the district court found, the United States merchant service uses a different method of counting for time spent aboard vessels than does the Navy, where Soderback had served on the USS BASHAW. Under the circumstances, the evaluation process necessarily involved the use of the Coast Guard's expertise and discretion. We do not think the Coast Guard's evaluation of the sea service can be said to lack a rational basis when Soderback, himself, on his application estimated that the USS BASHAW was at sea from 80 to 90 percent of the time he served aboard her.
 
 
 16
 Soderback argues that it was arbitrary and capricious for the Coast Guard to evaluate his naval service at 80 percent for purposes of his third mate license and at 100 percent for purposes of the two able seamen documents issued to him. However, the duties and responsibilities of a third mate are considerably greater than those of an able seaman. Also, under the regulations, the evaluation procedure for third mate licenses applies only to applications for officer licenses and not to applications for able seamen endorsements. Compare 46 C.F.R. § 10.01-1 with 46 C.F.R. § 12.01-1.
 
 
 17
 With regard to the denial of Soderback's application for a license as a mate of ocean freight and towing vessels, the district court found that Soderback was refused this license because his application showed evidence of only 3 months and 9 days of service aboard towing vessels operating primarily in coastwise waters, whereas the regulations require 6 months of service in the geographic area to be covered by the license. Soderback argued that since his application showed that he had foreign sea service, this service should have been considered as coastal experience, because foreign service is superior to coastwise service. However, as the district court correctly found, his application did not meet the requirement in the regulation, 46 C.F.R. § 10.05-36(a)(3), which calls for 6 months of service in the geographic area to be covered by the license. Accordingly, the denial of his application was reasonable.
 
 
 18
 In sum, we find that there was a rational basis for each of the denials complained of, and that the Coast Guard determinations were not arbitrary, capricious or an abuse of discretion.
 
 IV.
 
 19
 Soderback also characterizes the denial of his 1975 application for a regular third mate license as a revocation of his temporary third mate license, and argues that he was entitled to a hearing under 46 U.S.C. § 239, which requires a hearing when the Coast Guard takes action to suspend or revoke a license. This argument is belied by the regulations, which authorized the issuance of the temporary license and is without merit.[3] As previously stated, the temporary licenses were issued with a view to giving the applicant time to acquire the additional experience needed for a regular third mate license. See 46 C.F.R. § 11.01-3 and § 11.10-5. It was specifically provided in 46 C.F.R. § 11.01-10(a) that: "Licenses in temporary grades shall not be renewed." The Coast Guard took no affirmative action to revoke Soderback's temporary license; it simply refused, in accordance with the regulations, to renew the license when it expired at the end of its term. The fact that the Coast Guard and Soderback disagreed regarding his qualifications for a regular license does not convert the expiration into a revocation. The statute, 46 U.S.C. § 239, has no application in this situation.
 
 
 20
 For the reasons stated, the judgment of the district court is AFFIRMED.
 
 
 
 *
 Wilson Cowen, Senior Judge, United States Court of Claims, sitting by designation
 
 
 [1]
 The record does not show whether Soderback requested a hearing in connection with the denial of his application as a mate of ocean freight and towing vessels, as he did with respect to his application for a license as third mate of ocean, steam and motor vessels. However, the question is immaterial, since we reach the same result with respect to both applications
 
 
 [2]
 Soderback also relies on Grove v. Ohio State Univ. College of Vet. Med., 424 F.Supp. 377 (S.D.Ohio, E.D.1976), which held that a state university's denial of admission to its school of veterinary medicine infringed plaintiff's liberty interest, which was a general right to engage in a chosen occupation. That decision is based primarily on the Supreme Court's holding in Schware v. Board of Bar Examiners, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957), that the refusal of the bar examiners to permit plaintiff to take the state bar examination deprived him of due process, in that it denied him the opportunity to qualify for the practice of law. Both cases are distinguishable in view of our finding that Soderback was not deprived of an opportunity to engage in his basic occupation
 
 
 [3]
 The regulations authorizing the issuance of licenses in temporary grades were revoked effective August 26, 1976. 41 Fed.Reg. 30,648 (1976)