81 F.3d 168
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Douglas Ray HICKMAN, Plaintiff-Appellant,
v.
Sherman BLOCK; Claude L. Farris; Patrick G. Leonard; City
of Los Angeles; Darryl Gates, Police Chief; Robert
Talcott; Herbert Boekmann; Reva B. Tooley; Samuel L.
Williams; Stephen D. Yslas; William Cowdin; Frank E.
Piersol; Dominick J. Rivetti; City of San Fernando;
County of Los Angeles, Defendants-Appellees.
 No. 94-55836.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 13, 1995.
Decided April 5, 1996.
 
 1
 Before: HALL and JOHN T. NOONAN, Jr., Circuit Judges, and SHUBB,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Douglas Ray Hickman appeals from an order granting summary judgment in favor of the appellees in his action arising out of the appellees' successive refusals to grant him a concealed weapons permit. Hickman's complaint alleged various theories of liability under 42 U.S.C. sections 1983 and 1985(3). Viewing the evidence in the light most favorable to Hickman, we find that no genuine issue of material fact exists and that the district court correctly applied the law. We therefore affirm.
 
 
 4
 * The appellees suggest that some issues were rendered moot once Hickman obtained a one-year concealed weapons permit from the City of Los Angeles. We disagree. While the permit's issuance might limit the period for which Hickman can claim damages, it will not entirely nullify his alleged injury.
 
 II
 
 5
 Hickman seeks to have the appellees held liable under section 1983 for violating his Second Amendment right to bear arms. We address this claim in a separate, published opinion, and conclude that Hickman has no standing to allege a violation of the Second Amendment.
 
 III
 
 6
 Hickman argues that the appellees denied him equal protection of the laws, and thereby violated section 1983, by refusing without rational basis to issue him a permit. We disagree. Hickman has failed to meet his burden of showing that no set of facts could reasonably be conceived to demonstrate a rational basis for the decision to reject his application. Golden State Transit Corp. v. City of Los Angeles, 686 F.2d 758, 761 (9th Cir.1982), cert. denied, 459 U.S. 1105 (1983) (citing Vance v. Bradley, 440 U.S. 93, 111 (1979). Hickman contends that nothing but elitism and cronyism could have motivated the successive denials of his applications. His evidence, however, does not support this contention.
 
 
 7
 Hickman's application discloses significant differences from that submitted by the bodyguard to the CEO of ARCO. The statements Hickman made in support of his application, even if true, do not rise to the level of a clear and present danger to safety as required by the appellees' permit policy. In particular, Hickman reported one vague threat from a disgruntled ex-employee, but offered no evidence that the man attempted to carry out his threat or that he would do so in the future. The threat was therefore of uncertain credibility. As a second offer of evidence, Hickman says he was once "confronted" by two men while he loaded ammunition into his car. Yet it is not clear that this "confrontation" threatened Hickman's safety, or that these men would return to threaten him in the future, or that he would next time be incapable of repelling them as he did in the reported incident. Thus, this "threat" appears to have lacked substance. Finally, Hickman stated that, as a gun dealer, he felt endangered at gun shows whenever he carried cash without a concealed weapon. However, ordinary bank customers routinely carry cash with only existing police resources to protect them. Hickman did not show why his case should be regarded differently.
 
 
 8
 The CEO, in contrast, was an obvious target for terrorists and kidnappers. He attended well-publicized meetings, which would give potential assailants time to plan their attacks against him. He actually received bomb threats on repeated occasions. This individual's wealth was not simply a circumstantial indication of his political influence with the sheriff's and police departments, as Hickman asserts, but a real motivation for others to threaten him. To this argument Hickman objects that the bodyguard ought not to have been permitted to count threats against his employer towards a showing of "good cause," but should have been required to document threats against his own life. We think Hickman mischaracterizes the issue.
 
 
 9
 We find it eminently reasonable that an individual who shows good cause should prefer to arm his bodyguard instead of arming himself, particularly if he himself is not proficient with firearms. To hold otherwise would be to require the ARCO executive to fire his current bodyguard and hire another who personally could show cause. We think that such a result would be pointless. Furthermore, the position from which Hickman applied for a permit was not equivalent to that of an already-hired bodyguard. Hickman sought a permit that would enable him to work as a free agent, to defend with a concealed weapon employers who themselves could not show cause for a permit. This result seems to thwart the legitimate purposes of the policy, which are, among other things, to ensure that only those who show cause have access to concealed weapons. The ARCO bodyguard, on the other hand, obtained his permit in his capacity as an agent for his present employer. Presumably, if the bodyguard lost his current job he would lose his eligibility to obtain a permit.
 
 
 10
 Next, Hickman claims that judges and court personnel are granted permits preferentially and without a substantial showing of good cause. However, this claim amounts to mere assertion because Hickman has not demonstrated that such a policy exists. It is Hickman's burden to produce "specific facts" of unequal treatment, Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986), and this he has not done. Furthermore, even if such a policy did exist, it is not clear to us that it would be impermissible. It may well be that existing law enforcement resources are insufficient to handle the security needs of judicial officers who frequently face danger from disgruntled litigants or parties associated with criminal convicts.
 
 
 11
 After a year of discovery, Hickman has failed to carry his burden. He has not shown that he fits into the class of already-hired bodyguards, judges and police officers. He has failed to present any evidence of who has been turned down in their permit applications. Nor does he raise any issues of discovery on appeal. Having been granted a fair opportunity to discover the necessary evidence, a nonmoving party may not complain that summary judgment was improperly granted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).
 
 IV
 
 12
 The district court properly concluded that Hickman showed no evidence of a due process violation supporting the appelles' section 1983 liability. Hickman concedes that he has no property interest in a permit, but claims he has a liberty interest because without the permit he purportedly cannot work in the field of executive protection.
 
 
 13
 Accepting as true that a permit is a prerequisite to working as an executive bodyguard, Hickman's due process claim nevertheless fails. He has not shown that the denial of his applications precluded his engagement in "any of the common occupations of life." Board of Regents v. Roth, 408 U.S. 564, 572 (1972). His applications "were not denied on grounds to which any stigma is attached [such as] dishonesty, crime, or immorality." Soderback v. Siler, 610 F.2d 643, 646 (9th Cir.1979). He has thus suffered no prejudice in his search for other work. It insufficient for due process purposes that he has been foreclosed from working in one narrow area of employment, or that he has been prevented from practicing in his chosen field in a particular way. See Erdelyi v. O'Brien, 680 F.2d 61, 63 (9th Cir.1982) (finding no liberty interest in a concealed weapons permit sought for the personal safety of a criminal defense investigator); Soderback, 610 F.2d at 45-46 (finding no liberty interest in a license to serve as merchant marine officer, when the seaman was still able to pursue his occupation as a "merchant mariner"). Likewise, due process is not offended by the fact that without a permit Hickman may miss lucrative business opportunities. To show a violation of the Constitution, one must show an exclusion from employment at some greater level of generality than Hickman has done. While "common occupation of life" is admittedly imprecise as a standard, Roth, 408 U.S. at 572, Erdelyi and Soderback are direct authority that a specific occupation is not "common" enough.
 
 
 14
 For these reasons there is also no merit in Hickman's final contention, that the policy stating "[n]o position or job classification in itself should constitute good cause for the issuance or denial of a license" is unconstitutional on its face. Exclusion from a particular type of job is not actionable under Roth, Erdelyi and Soderback.
 
 V
 
 15
 The district court erred in determining that Hickman's section 1985(3) claim exceeded the statutory limitation period. The last overt act in the alleged conspiracy took place on June 14, 1991, when the Los Angeles County Sheriff's Department denied Hickman's application for a second time. This circuit determines the accrual of civil conspiracies for limitations purposes in accordance with the last overt act doctrine. Gibson v. United States, 781 F.2d 1334, 1340 (9th Cir.1986), cert. denied, 107 S.Ct. 928 (1987). As Hickman filed his suit just four months later, on October 15, 1991, he was well within the one-year limitation period. Cal.Code Civ.P. § 340(3); McDougal v. County of Imperial, 942 F.2d 668 (1991) (one-year period applies to section 1985 actions in California).
 
 
 16
 Nevertheless, we affirm the grant of summary judgment on another ground, which was not relied upon by the district court, but which was argued below by the City of Los Angeles: Hickman has failed to allege facts tending to show his membership in a protected class. See Trimble v. City of Santa Rosa, 49 F.3d 583, 584 (9th Cir.1995) (Courts of appeals may affirm a grant of summary judgment on any ground supported by the record.). To state a cause of action under section 1985(3), a plaintiff must allege, inter alia, that "some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action." Bray v. Alexandria Women's Health Clinic, 113 S.Ct. 753, 758 (1993). Thus we have held that section 1985(3) extends beyond race only when "the courts have designated the class in question a suspect or quasi-suspect classification requiring more exacting scrutiny or that Congress has indicated through legislation that the class required special protection." Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir.1992). Clearly, weapons permit applicants do not constitute a protected class.
 
 
 17
 Hickman counters, citing United States v. Price, 383 U.S. 787, 789 (1966), that class-based animus is not a requirement when section 1985(3) is asserted against the government. Price, however, is not on point. It deals with the elements of criminal rather than civil conspiracy. Moreover, circuit courts have consistently held that the class-based animus requirement applies equally in cases of public and private conspiracies. See Gagliardi v. Village of Pawling, 18 F.3d 188, 194 (2nd Cir.1994); Munson v. Friske, 754 F.2d 683, 695 n. 8 (7th Cir.1985). This conclusion is consonant with the language used by the Supreme Court in its leading decisions concerning the class-based animus requirement, none of which limits its holding to private conspiracies. See Bray, 113 S.Ct. 753; United Brotherhood of Carpenters & Joiners v. Scott, 463 U.S. 825 (1983); Griffin v. Breckenridge, 403 U.S. 88 (1971). It also adheres to the purposes of the Ku Klux Klan Act, which aimed only to protect against deprivations of equal protection, not to supplant state tort law with federal legislation. See Carpenters, 463 U.S. at 834-36. Hence, we agree with the district court that Hickman's section 1985(3) claim lacked merit.
 
 VI
 
 18
 Because Hickman contends for the first time on appeal that the appellees' policy is illegal under its enabling statute, California Penal Code section 12050, we decline to address this issue.
 
 VI
 
 19
 Likewise, because Hickman contends for the first time on appeal that the district court abused its discretion in failing to review certain evidence in camera, we decline to address this issue. No motion was filed in the district court to request in camera review.
 
 VII
 
 20
 The district court did not err in permitting the City of San Fernando to join in the briefs of the County of Los Angeles in the County's motion for summary judgment. Hickman is correct that this shorthand procedure is not described in Federal Rule 56; however, the Central District's Local Rules permit procedural improvisations where the federal rules are silent, provided that the innovation is "not inconsistent" with the Federal Rules, and conforms to practice "in courts of equity of the United States."[1] Thus, Hickman must show the procedure to have been inequitable to support his claim that the district court erred.
 
 
 21
 Hickman complains that the addition of San Fernando to the County's motion was unfair because his briefs had been submitted the day before San Fernando filed its motion. Nevertheless he has failed to demonstrate any inequity. If granting the motion would have prevented Hickman from presenting relevant arguments to the court, he should have moved for supplemental briefing. If it would have prevented his discovering or reviewing otherwise unavailable evidence, he should have requested discovery or a continuance. He did neither. Furthermore, Hickman now on appeal fails to point to any particular argument or type of evidence that was excluded by San Fernando's manoeuvre. We do not find this surprising, as discovery against San Fernando had at this point been on-going for many months, and Hickman had ample opportunity to obtain the evidence he required. Also, because the County and San Fernando shared a common permit policy, Hickman's legal arguments applied to both parties, and much of the evidence Hickman obtained against the County would be admissible against San Fernando. Having thus failed to show that prejudice or unfairness resulted from the improvised procedure, we uphold the action of the district court.
 
 VIII
 
 22
 Finding in the record no genuine issue of material fact, we affirm the order of the district court. AFFIRMED.
 
 
 
 *
 Hon. William B. Shubb, United States District Judge for the Eastern District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 See Cent.Dist.Cal., Local R. 30; Briskin v. Ernst & Ernst, 398 F.Supp. 997, 1000 (C.D.Cal.1975) (allowing parties to join in motions for summary judgment)