Joan Marie DONOGHUE,
Plaintiff–Appellant,

v.

The COUNTY OF ORANGE; Dennis W.
La–Ducer, Defendants–Appellees.

No. 86–5927.

United States Court of Appeals,
Ninth Circuit.

Argued March 4, 1987.

Submitted April 23, 1987.

Decided Sept. 29, 1987.

As Amended Dec. 2, 1987 and
May 26, 1988.

David Leung, Santa Ana, Cal., for plaintiff-appellant.

James P. Slack, Santa Ana, Cal., for defendants-appellees.

Before TANG, ALARCON and KOZINSKI, Circuit Judges.

TANG, Circuit Judge:

Donoghue appeals the dismissal of her federal claims under the Civil Rights Act, sections 1983, 1985 and 1986, and of pendent state claims for relief, and the entry of a directed verdict in favor of Orange County and a county official in her Title VII sex discrimination claims. The district court dismissed the federal claims and the pendent state claims as barred by applicable statutes of limitation. Donoghue also appeals the court's order quashing two subpoenas on the ground that compliance with one would be oppressive and that the other failed to specify who was requested to testify on behalf of the county. We reverse in part and affirm in part.

## BACKGROUND

Donoghue was promoted from a clerk-typist position to Deputy Sheriff I for Orange County in November 1977. She was assigned to work in the Orange County Women's Jail until she entered the Training Academy of the Orange County Sheriff's Department in January 1978. Before she entered the Academy Donoghue was told by Sheriff Gates that no female deputy sheriff would perform patrol duties as long as he was sheriff, but would only work in the Orange County jail. There were 28 men and 4 women in Donoghue's class at the Academy. The training sessions lasted from 6:30 a.m. until 6:00 p.m., five days a week, and were based on a stress training model intended to prepare recruits to be aggressive and combative. Donoghue complains that several aspects of her treatment while at the Academy constitute impermissible discrimination on the basis of sex.

1. *Gig and research memoranda.* The punishment for various rule infractions was the imposition of writing assignments which took 45 minutes to complete. Donoghue was required to write an average of five such memoranda each night. Men who received gig assignments typically only had to prepare one or two a day. The time Donoghue spent preparing memoranda detracted from the time she needed for studying and preparation for the next day's training.

2. *Verbal harassment.* The Academy's stress training method included a certain amount of verbal harassment. Donoghue was subjected to disparaging statements because of her gender.

3. *Physical harassment.* Stress training also included the imposition of physical punishments, in the form of running laps and doing sets of 20–50 push-ups, for various infractions. Donoghue was required to do push-ups three or four times a day and to run laps from 10 to 20 times a week. Men who received these punishments had to do an average of one or two sets of push-ups a day, and run laps only twice a week. Donoghue's performance on physical training tests was impaired because the tests often occurred immediately after she had been required to do extra laps or push-ups.

4. *Physical training and weight.* Two male deputies were exempted from the required physical training. Among several deputies who were overweight, only Dono-

ghue and one other female were required to "weigh-in" every day and only Donoghue received poor evaluations because of her weight (10–12 pounds overweight).

5. *Firearms training.* While many of the males and one of the other females had previous firearms experience, Donoghue had none. She was failing in that aspect of her training but was unable to arrange any extra practice because the firing range was unavailable. When she commented that the shotgun would be easier to handle if it had a shorter butt, her instructor replied that women do not belong in police work.

6. *Failing grades and termination.* Donoghue was aware that her weekly test scores were not at a passing level, but she was not warned that a failure to improve would lead to her termination. Male deputies were given such warnings. Males who failed the training were permitted to repeat the program, but Donoghue was not offered that opportunity.

Donoghue was terminated on March 30, 1978. (She subsequently obtained a position as a police officer with the City of Anaheim, for which she attended and graduated from Rio Hondo Police Academy, a program which did not employ stress training.) Donoghue filed a charge of employment discrimination with the Division of Fair Employment Practices of the California Department of Industrial Relations on April 19, 1978; the Division issued a right to sue letter on November 5, 1978. Donoghue filed a charge with the EEOC on June 6, 1978; EEOC issued a right to sue letter on March 4, 1983.

The EEOC letter indicated Donoghue was treated discriminatorily in that (1) she did not receive a warning to improve, while male recruits did; (2) she failed because of her physical training scores, while a male recruit was excused from physical training; (3) she received poor evaluations because of her weight, while males more overweight than she did not receive poor evaluations; (4) she was terminated without the opportu-

nity to repeat the training, while a male who failed was permitted to repeat training; and (5) of four women admitted to the academy, two failed.

Donoghue filed suit in federal court on July 14, 1983, and filed her first amended complaint on July 27, 1984. On November 13, 1984 the district court dismissed Claims 3–12 of her complaint, without explanation. The two remaining Title VII claims were tried to a jury on April 1, 1986.[1] On April 2, 1986 the district court granted an oral motion to quash Donoghue's two subpoenas, and then directed a verdict for the defendants. The judgment was entered May 6, 1986, and Donoghue timely appealed on May 7, 1986.

## ANALYSIS

I. Statutes of Limitation and Equitable Tolling

■ A dismissal on statute of limitations grounds presents a question of law reviewed de novo. *In re Swine Flu Products Liability Litigation,* 764 F.2d 637, 638 (9th Cir.1985).

The district court did not explain its reason for dismissing Claims 3–12, but the motion to dismiss argued that Claims 1–6 were barred by the statute of limitations, and that if the court dismissed those 6 federal claims, it would be appropriate to dismiss the state claims enumerated in Claims 7–12 for lack of jurisdiction. On appeal, both parties appear to believe that all of the claims were dismissed as barred by the statutes of limitation.

■ Claims 3–6 are based on the Civil Rights Acts, 42 U.S.C. §§ 1983, 1985 and 1986. The appropriate statutes of limitations for these claims are as follows: three years for the section 1983 and 1985 claims, Cal.Civ.Proc.Code § 338(1) ("action upon a liability created by statute"); *Venegas v. Wagner,* 704 F.2d 1144, 1145 (9th Cir. 1983);[2] and one year for the section 1986

---

**1.** The parties consented to trial by jury, a right neither provided nor prohibited by Title VII. *See Great American Federal Savings v. Novotny,*

442 U.S. 366, 375, 99 S.Ct. 2345, 2350, 60 L.Ed. 2d 957 (1979).

**2.** While after the Supreme Court's decision in *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938,

claim, 42 U.S.C. § 1986; *Burnett v. Grattan,* 468 U.S. 42, 48, 104 S.Ct. 2924, 2928, 82 L.Ed.2d 36 (1984).

Unless saved by a tolling doctrine, all of Donoghue's federal claims are barred because she did not file them until July 14, 1983, more than five years after accrual of her claims on March 30, 1978, when she was terminated.

 The state claims Donoghue alleges have different statutes of limitations, but the longest is the four year limit for suits on a written contract, Cal.Civ.Proc. Code § 337 which would apply to Claims 9 and 12, which involve breach of an employment contract and tortious interference with a contract. Claims 7 and 8 involve breaches of statutory rights, and are governed by the three year limit of Cal.Civ. Proc.Code § 338(1). Claims 10 and 11 allege intentional and negligent misrepresentation, and would be governed by the one year limit for tort actions. Cal.Civ.Proc. Code § 340. Thus, all of Donoghue's state claims are barred unless the tolling doctrine operates to save them.

 The Supreme Court has clearly held that in the absence of a federal statute of limitations for claims arising under the Civil Rights Acts of 1866 and 1871, the controlling statute of limitations is the most appropriate one provided by state law. *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975) (section 1981 claim). The Court has also indicated that state law doctrines allowing for tolling may be applicable to section 1983 actions. *Board of Regents v. Tomanio,* 446 U.S. 478, 486–87, 100 S.Ct. 1790, 1796–97, 64 L.Ed.2d 440 (1980). *See also Conerly v. Westinghouse Elec. Corp.,* 623 F.2d 117, 119 (9th Cir. 1980) (state tolling doctrines apply to a

section 1981 action). The Supreme Court's reasoning is that state tolling doctrines should apply unless they are inconsistent with federal policy underlying the cause of action under consideration. *Chardon v. Fumero Soto,* 462 U.S. 650, 657, 103 S.Ct. 2611, 2616, 77 L.Ed.2d 74 (1983) ("[N]o federal policy—deterrence, compensation, uniformity, or federalism—[is] offended by the application of state tolling rules."); *Tomanio,* 446 U.S. at 487–92, 100 S.Ct. at 1796–99; *Johnson,* 421 U.S. at 465, 95 S.Ct. at 1722.

We think it is clear that we must apply the tolling principles of California law to both the federal and state claims in this case.[3] The teaching of Johnson, Tomanio and Chardon is that there is no federal policy underlying the federal claims which is inconsistent with the application of the state tolling doctrine.

Under California's equitable tolling doctrine, the prior pursuit of a federal remedy may toll the state statute of limitations when a person has "several formal legal remedies and reasonably and in good faith pursues one." *Jones v. Tracy School Dist.,* 27 Cal.3d 99, 108, 165 Cal.Rptr. 100, 104, 611 P.2d 441, 445 (1980) (citing *Elkins v. Derby,* 12 Cal.3d 410, 115 Cal.Rptr. 641, 525 P.2d 81 (1974)). The doctrine applies to save a state claim from dismissal when a plaintiff has reasonably pursued a concurrent federal remedy. *Addison v. State,* 21 Cal.3d 313, 146 Cal.Rptr. 224, 578 P.2d 941 (1978). The equitable tolling "rule is not predicated upon the necessity of the completion of the one remedy as a prerequisite to the pursuit of the other." *Myers v. Orange County,* 6 Cal.App.3d 626, 635, 86 Cal.Rptr. 198, 203 (1970). The statute of limitations is tolled during the period while time is consumed in an appeal. *Id.* at 635–

85 L.Ed.2d 254 (1985), the statute of limitations for section 1983 claims is one year, Cal.Civ.Proc. Code § 340(3) (one-year limit for tort actions), we have declined to apply *Wilson* retroactively to actions that accrued and were filed in California before the *Wilson* decision. *Gibson v. United States,* 781 F.2d 1334, 1339–40 (9th Cir.1986). We therefore also need not decide what effect *Wilson* has on the statute of limitations for section 1985 claims.

3. California's tolling doctrine does not apply to the section 1986 claim. Rather the district court must apply the federal equitable tolling doctrine, which permits tolling when it is not inconsistent with the legislative purpose. *American Pipe and Constr. Co. v. Utah,* 414 U.S. 538, 556–59, 94 S.Ct. 756, 767–69, 38 L.Ed.2d 713 (1974); *Whittaker v. Whittaker Corp.,* 639 F.2d 516, 527 (9th Cir.), *cert. denied,* 454 U.S. 1031, 102 S.Ct. 566, 70 L.Ed.2d 473 (1981).

36, 86 Cal.Rptr. at 203. The doctrine suspends the statute of limitations pending exhaustion of administrative remedies, even though no statute makes exhaustion a condition of the right to sue. *San Diego County v. Myers,* 147 Cal.App.3d 417, 423, 195 Cal.Rptr. 124, 127 (1983); *Campbell v. Graham–Armstrong,* 9 Cal.3d 482, 107 Cal.Rptr. 777, 509 P.2d 689 (1973). *See generally Collier v. City of Pasadena,* 142 Cal.App.3d 917, 922–24, 191 Cal.Rptr. 681, 684–85 (1983) (discussing history and policy reasons for equitable tolling doctrine).

California courts have made it clear that there is a "definitive three pronged test for invocation of this doctrine." *Id.* at 924, 191 Cal.Rptr. at 685. The three core elements are (1) timely notice to the defendant in filing the first claim; (2) lack of prejudice to defendant in gathering evidence to defend against the second claim; and, (3) good faith and reasonable conduct by the plaintiff in filing the second claim. *Id.* This court has reiterated the California test and held that the doctrine would apply if there were "timely notice, and lack of prejudice to the defendant, and reasonable and good faith conduct on the part of the plaintiff." *Retail Clerks Union Local 648 v. Hub Pharmacy, Inc.,* 707 F.2d 1030, 1033 (9th Cir.1983). We note that equitable tolling is not applicable when a plaintiff has pursued a remedy as to only one of several distinct wrongs. *Arnold v. United States,* 816 F.2d 1306, 1312 (9th Cir.1987) (citing *Aerojet General Corp. v. The Superior Court,* 177 Cal.App.3d 950, 223 Cal.Rptr. 249, 254 (1986); *Loehr v. Ventura County Community College Dist.,* 147 Cal.App.3d 1071, 195 Cal.Rptr. 576, 585 (1983)). This rule necessitates a careful evaluation of the wrongs Donoghue seeks to remedy through her several federal and state claims.

We vacate the district court's dismissal of the federal civil rights and pendent state claims and remand for a determination of whether Donoghue is entitled to application of the principles of equitable tolling.

## II. Quashing the subpoenas

■ This court reviews an order to quash a subpoena only for abuse of discretion. *Premium Serv. Corp. v. Sperry & Hutchinson Co.,* 511 F.2d 225, 229 (9th Cir.1975). Such abuses "must be unusual and exceptional; we will not merely substitute our judgment for that of the trial judge." *Id.*

### a. Subpoena duces tecum

■ This subpoena was served one week before trial and sought far reaching and extensive data pertaining to twenty years of employment records, all records for the academy class of which Donoghue was a member, records reflecting different treatment of male and female recruits in the 38 classes which had preceded Donoghue's, the recruit biography of each recruit in classes 20–39, the training bureau manual for the years 1975–79, all rules and policies in effect in 1977 with respect to: physical training, warnings to failing recruits, repetition of training, preferential treatment based on gender, sex discrimination, and reasons for stress training.

The district court heard arguments on the motion to quash this subpoena and ruled that it should be quashed because it would be impossible for the County to comply with the production demanded at such a late date. The court indicated that the County had apparently led Donoghue's attorney down a "primrose path" but that the attorney had simply not done his job during discovery because he had not served interrogatories or filed a motion to compel production. The motion to quash was argued on the second day of the trial and the court did not think it reasonable to expect production of such extensive information at that point in time.

The decision does not constitute an abuse of discretion.

### b. Subpoena on Orange County

■ The district court quashed this subpoena because it failed to designate an individual desired to testify. Fed.R.Civ.P. 45 requires that individuals be specifically named, so this decision was not an abuse of discretion.

Donoghue argues that because Fed.R.Civ.P. 30(b)(6) permits a party to depose a corporation or governmental agency by simply describing "with reasonable particularity the matters on which examination is requested" and then letting the agency designate the individual to testify, the same policy should apply to Rule 45 requirements for subpoenaing witnesses. Donoghue did specify the matters on which testimony was sought, and asked for agents to be designated from the County Personnel Office, the Affirmative Action Office, and the Sheriff–Coroner's Office. We have discovered no authority, and Donoghue cites none, for the proposition that the Rule 30 standards should govern Rule 45 subpoenas of witnesses. Thus we find no abuse of discretion in the district court's order quashing this subpoena.

## III. Directed Verdict

In determining the propriety of a directed verdict this court has the same role as the district court. *Othman v. Globe Indem. Co.*, 759 F.2d 1458, 1463 (9th Cir.1985). Thus the decision is reviewed de novo. *West America Corp. v. Vaughan–Bassett Furniture Co.*, 765 F.2d 932, 934 (9th Cir.1985). The court must view the evidence in the light most favorable to the nonmoving party and draw all possible inferences in favor of that party. *Blanton v. Mobil Oil Corp.*, 721 F.2d 1207, 1219 (9th Cir.1983), *cert. denied*, 471 U.S. 1007, 105 S.Ct. 1874, 85 L.Ed.2d 166 (1985). A directed verdict is proper when the evidence permits only one reasonable conclusion as to the verdict. *Peterson v. Kennedy*, 771 F.2d 1244, 1256 (9th Cir.1985), *cert. denied*, 475 U.S. 1122, 106 S.Ct. 1642, 90 L.Ed.2d 187 (1986). A directed verdict is improper when there is conflicting testimony raising a question of witness credibility because "[i]t is the exclusive function of the jury to weigh the credibility of the witnesses." *Twin City Fire Ins. v. Philadelphia Life Ins. Co.*, 795 F.2d 1417, 1423 (9th Cir.1986) (quoting *United States v. Horowitz*, 756 F.2d 1400, 1406 (9th Cir.), *cert. denied*, 474 U.S. 822, 106 S.Ct. 74, 88 L.Ed.2d 60 (1985)).

The question, then is whether *de novo* review, with evidence viewed in the light most favorable to Donoghue, leads this court to think she had made out a prima facie case of discrimination amenable to either disparate treatment or disparate impact analysis under Title VII.

### a. Disparate Impact

The prima facie case requires that a plaintiff (1) show a significant disparate impact on a protected class, (2) identify specific employment practices or selection criteria and (3) show the causal relationship between the identified practices and the impact. *Atonio v. Wards Cove Packing Co.*, 810 F.2d 1477, 1482 (9th Cir. 1987) (en banc). While the neutral practices Donoghue points to might well be susceptible to analysis for disparate impact, she has failed to offer substantial evidence that there was a disparate impact on women as a class. Without the evidence sought by the belated subpoena duces tecum, Donoghue did not have the information necessary to support analysis of her claim of Title VII discrimination under the disparate impact model.

### b. Disparate Treatment

Proof of disparate treatment requires a showing that the employer intentionally "treats some people less favorably than others because of their race, color, religion, sex, or national origin." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977). The intent to discriminate can be inferred in an individual discrimination claim when a plaintiff makes a prima facie showing of membership in a protected class, by one who applied for, and failed to get, a job for which he was qualified and which remained open after his rejection. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973).

The evidence Donoghue presented is not especially strong, but because a jury might draw inferences more favorable to Donoghue, the district court should not have granted the motion for a directed verdict. The facts tend to suggest that Donoghue was treated more harshly than other recruits (i.e., that she was penalized with memoranda, push-ups and laps more

frequently, that her weight was a basis for negative evaluations when overweight males were not so evaluated, that she was not warned of a need to improve, and that she was not given the opportunity to repeat the training). From these facts a juror could infer that Donoghue was simply unfit for the training program, or that there was some intent to discriminate against her because of her sex. Comments made by the firearms instructor and by Sheriff Gates tend to support the possible inference of a bias against women in the Academy.

The directed verdict was inappropriate because the district court did not draw all possible inferences in favor of Donoghue, and because it improperly made credibility determinations when it said "[c]redibility enters into this and I don't have to believe everything she says." Credibility determinations are within the exclusive province of the jury. *Twin City Fire Ins. Co. v. Philadelphia Life Ins. Co.,* 795 F.2d 1417, 1423 (9th Cir.1986); *United States v. Horowitz,* 756 F.2d 1400, 1406 (9th Cir.), *cert. denied,* 474 U.S. 822, 106 S.Ct. 74, 88 L.Ed.2d 60 (1985).

The judgment of the district court is AFFIRMED in part, VACATED in part and REVERSED in part. The cause is REMANDED for a new trial.