942 F.2d 668
 Donald C. McDOUGAL, Joyce R. McDougal, Donald C. McDougal,
Jr., Plaintiffs-Appellants,
v.
COUNTY OF IMPERIAL, John Kennerson, James Bucher, Tunney
Williams, Herman Sperber, David Stump, David E.
Pierson and Does 1 through 50,
inclusive, Defendants-Appellees.
 No. 90-55774.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 7, 1991.
Submission Vacated March 11, 1991.
Resubmitted July 2, 1991.
Decided Aug. 20, 1991.
 
 Susan J. Boyle, McDougal and Associates, La Jolla, Cal., for plaintiffs-appellants.
 Michael T. Gibbs, David E. Czelusniak, Amy B. Vandeveld, Gibbs, Eppsteiner & Stagg, San Diego, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Southern District of California.
 Before CANBY and RYMER, Circuit Judges, and WARE,* District Judge.
 RYMER, Circuit Judge:
 
 
 1
 This case involves a long-standing dispute over rights to use property and the right to regulate its use.
 
 
 2
 Donald C. McDougal, Joyce R. McDougal, and Donald C. McDougal, Jr. have sued the County of Imperial for civil rights violations under 42 U.S.C. §§ 1983 & 1985(3) and for inverse condemnation. The district court dismissed their complaint under Fed.R.Civ.P. 12(b)(6), holding that the § 1983 and § 1985(3) claims were barred by a one-year statute of limitations and that the McDougals failed to state a claim for inverse condemnation because the County's regulatory purpose was legitimate and therefore it could have no obligation to compensate for the denial of all use of their property.
 
 
 3
 We have jurisdiction under 28 U.S.C. § 1291, and we affirm dismissal of the § 1983 and § 1985(3) claims. California's one-year general statute of limitations for personal injury actions, Cal.Civ.Proc.Code § 340(3), applies to both. We reverse dismissal of the takings claim because the existence of a legitimate purpose does not automatically insulate a municipality from a claim for just compensation; a court must balance the substantiality of the public interest against the severity of the private interference.
 
 
 4
 * The McDougals own real property in Imperial County on which they operate a commercial water business. As a result of their operation of this water business, they have been embroiled in litigation with the County for most of the last twenty years. The McDougals' troubles began in 1972, when they purchased property containing a water well from W. Erle Simpson (the "Simpson Well" property). This well was subject to a conditional use permit which restricted Simpson and subsequent owners to selling water derived from the well only for use within the County. Like Simpson, the McDougals pumped and commercially sold water from the well.
 
 
 5
 In June 1972, the McDougals entered into a contract with water brokers from Mexicali, Mexico to supply water for sale in Mexico. This deal resulted in intensified water operations which involved loading noisy, "unsightly" trucks with water, both day and night. The McDougals' neighbors grew irritated and complained to the County. In October 1972, the County sued the McDougals to enforce zoning restrictions and eliminate a nonconforming use on the property. It also sought to enforce the export restriction in the conditional use permit and to abate what it deemed to be a public nuisance. The trial court found in favor of the County and enjoined the McDougals' trucking operations. On appeal, the California Supreme Court upheld the permit restriction, but reversed the trial court's zoning holdings. County of Imperial v. McDougal, 19 Cal.3d 505, 564 P.2d 14, 138 Cal.Rptr. 472, appeal dismissed, 434 U.S. 944, 98 S.Ct. 469, 54 L.Ed.2d 306 (1977).
 
 
 6
 After the California Supreme Court decision, the McDougals' Mexican water buyers challenged the export restriction as unconstitutional. The district court granted a preliminary injunction preventing the County from enforcing the export restriction, and we affirmed. Munoz v. County of Imperial, 604 F.2d 1174 (9th Cir.1979). The Supreme Court vacated and remanded, indicating that the Anti-Injunction Act, 28 U.S.C. § 2283, barred suit unless the Mexican plaintiffs were "strangers" to the state court litigation. County of Imperial v. Munoz, 449 U.S. 54, 60, 101 S.Ct. 289, 66 L.Ed.2d 258 (1980). On remand, this was found to be the case and in 1983, a permanent injunction restraining enforcement of the restriction was entered.
 
 
 7
 The County then pursued the public nuisance claim. This action also went through various stages and was expanded to cover a second well which the McDougals drilled on the same property in June 1978. In February 1982, the trial court issued a permanent injunction abating the nuisance. The California Court of Appeal affirmed on March 4, 1988.
 
 
 8
 In the meantime, while the McDougals and the County were wrangling over the use of the Simpson Well property, the McDougals purchased the "Clifford Well" property in 1977. They extended their water operations to this property.[1] Soon after the McDougals purchased this parcel, the County passed an ordinance providing that the right to appropriate water should be denied or limited when there is evidence of an "overdraft." This happens when more water is taken out than supplied. In December 1978, the County denied the McDougals' request for an appropriation permit.
 
 
 9
 In 1980, the County passed an ordinance requiring a "reasonable amortization period" for nonconforming uses. The County determined that the commercial water operation on the Clifford Well property was a nonconforming use and, specifically considering the value of the property for use as a residential subdivision, determined that six years was a reasonable amortization period. The California Court of Appeal upheld this decision June 12, 1987.
 
 
 10
 Despite the six years the McDougals were given to eliminate the nonconforming use, the County designated their property a "floodway" in March 1984. According to the McDougals' complaint, this rendered the property valueless because it could no longer be used for residential purposes. They therefore applied for a conditional use permit to continue water operations. The County said it would not consider their application unless they submitted an Environmental Impact Report including a "verified ground water model" for that particular water basin. The McDougals were unable to comply with this request because the data necessary to produce such a model did not exist. They complained that obtaining the desired "verified" model was impossible, but the County refused to waive or modify the requirement. The County also refused to consider an alternative model the McDougals proffered.
 
 
 11
 In October 1989, the McDougals brought this action, alleging that the County passed various ordinances, denied permit applications and otherwise conspired to deprive them of their rights to operate their water business. They also allege that the County has deprived them of the total value of their land by designating it a "floodway" and requiring an impossible environmental impact report as a condition of continuing commercial water operations.
 
 
 12
 The County moved to dismiss under Fed.R.Civ.P. 12(b)(6), arguing that the district court should abstain from hearing the action and, alternatively, that the allegations failed to state a claim for inverse condemnation and that the remaining claims are either barred by the statute of limitations or are not ripe. The district court granted the motion and dismissed the McDougals' complaint with prejudice. The McDougals appeal.
 
 II
 
 13
 Relying on Wilson v. Garcia, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), and Owens v. Okure, 488 U.S. 235, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989), the district court concluded that the applicable statute of limitations for the § 1983 and § 1985(3) claims was California's one-year statute applicable to personal injury actions, Cal.Civ.Proc.Code § 340(3). Because the McDougals filed suit on October 3, 1989, more than a year after the tolling period ended with the conclusion of the state court litigation March 4, 1988, the district court held the claims were barred.
 
 
 14
 The McDougals contend that the proper statute of limitations for their § 1983 and § 1985(3) claims is the four-year period in the "catchall" statute, Cal.Civ.Proc.Code § 343. They also maintain that a one-year period of limitations is too restrictive to accommodate the important federal interests at stake in a civil rights action. We disagree.
 
 A. Section 1983 Claim
 
 15
 Even though Congress provided no federal statute of limitations for claims brought under 42 U.S.C. § 1983, the Supreme Court has held that because § 1983 actions are best characterized as actions for injuries to personal rights, courts should borrow the state statute of limitations that applies to personal injury actions. Wilson, 471 U.S. at 279-80, 105 S.Ct. at 1948-49. After Wilson, we held that the proper statute of limitations for § 1983 actions in California is Cal.Civ.Proc.Code § 340(3), which provides a one-year period for an "action for libel, slander, assault, battery, false imprisonment, seduction of a person below the age of legal consent, or for injury to or for the death of one caused by the wrongful act or neglect of another." Usher v. City of Los Angeles, 828 F.2d 556, 558 (9th Cir.1987); see also Donoghue v. County of Orange, 848 F.2d 926, 929 n. 2 (9th Cir.1988) ("the statute of limitations for section 1983 claims is one year, Cal.Civ.Proc.Code § 340(3)"). Prior to Wilson, we had held that the proper statute of limitations was three years, the period for causes of actions created by statute, Cal.Civ.Proc.Code § 338(1). See Usher, 828 F.2d at 558-59. Wilson thus "had the effect of reducing from three years to one year the statute of limitations applicable to section 1983 actions filed in federal courts sitting in California." Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 627 (9th Cir.1988).
 
 
 16
 In Owens v. Okure, the Supreme Court addressed the question of which state statute to apply when a state has multiple statutes of limitations applicable to personal injury/tort actions. 488 U.S. at 249-50, 109 S.Ct. at 581-82. The Court held "that where state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions." Id. The McDougals contend that the "general or residual" statute of limitations that applies to their § 1983 claim is Cal.Civ.Proc.Code § 343, which provides that "[a]n action for relief not hereinbefore provided for must be commenced within four years after the cause of action shall have accrued."
 
 
 17
 We considered and rejected this argument in Del Percio v. Thornsley, 877 F.2d 785, 786 (9th Cir.1989). In Del Percio, we examined whether Owens in any way overruled or undermined our decision in Usher. We concluded that it did not:
 
 
 18
 We believe that Owens in no way undermines our decision in Usher.... There can be no question that § 340(3) is California's residual or general personal injury statute since the section contains an express 'catchall' provision, covering any 'injury to or ... death of one caused by the wrongful act or neglect of another.' Thus, Owens only reinforces our decision in Usher that § 340(3) is the applicable statute of limitations for § 1983 actions in California.
 
 Id. (footnotes omitted). We also added:
 
 19
 While Cal.Civ.Proc.Code § 343 (West 1982 and Supp.1984) is nominally California's 'catchall' statute of limitations, ... § 343 cannot be construed as the residual personal injury statute for the purposes of Owens since all personal injury actions are expressly covered by the 'catchall' language in § 340(3) cited [above].
 
 
 20
 Id. at 786 n. 3 (emphasis in original); see also Harrison v. County of Alameda, 720 F.Supp. 783, 790 (N.D.Cal.1989) (applying one-year statute of limitations to § 1983 and § 1981 claims, stating "section 340(3) acts as a general personal injury statute, both in its language and its judicial construction").
 
 
 21
 Del Percio is controlling. The statute of limitations in § 1983 actions filed in California is § 340(3), not § 343.
 
 
 22
 The McDougals contend that this one-year time limit "creates an extremely limited and restrictive remedy to seek reproval for civil rights violations and does not further the important federal interests at stake."[2] Although the Supreme Court expressly left this question open in Owens, 488 U.S. at 250 n. 13, 109 S.Ct. at 582 n. 13, we implicitly rejected it in Del Percio and other decisions recognizing that the proper statute of limitations in California is one year. See, e.g., De Anza Properties X, Ltd. v. County of Santa Cruz, 936 F.2d 1084, 1085 (9th Cir.1991); Donoghue, 848 F.2d at 930 n. 2; Usher, 828 F.2d at 558. Congress has also demonstrated its belief that a one-year period is reasonable in the civil rights context, providing for such a period in 42 U.S.C. § 1986. Cf. Burnett v. Grattan, 468 U.S. 42, 61, 104 S.Ct. 2924, 2935, 82 L.Ed.2d 36 (1984) (Rehnquist, J., concurring in the judgment) ("The willingness of Congress to impose a 1-year limitations period in 42 U.S.C. § 1986 demonstrates that at least a 1-year period is reasonable."). The district court therefore correctly applied § 340(3) and dismissed claims accruing more than one year before the complaint was filed.
 
 B. Section 1985(3) Claim
 
 23
 Both parties assume that the same statute of limitations applies to the McDougals' claim under § 1985(3).[3] Yet no opinion cited by either side discusses the statute of limitations in relation to a claim for relief under § 1985(3). Although the Supreme Court has held that claims under 42 U.S.C. § 1981 should also be governed by the state statute of limitations for personal injury actions, Goodman v. Lukens Steel Co., 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987), the Court has not made a definitive statement concerning the statute to be applied to § 1985(3) claims, and we have not addressed the issue.[4]
 
 
 24
 The Third Circuit, and several district courts, however, have explicitly held that the same limitations period that applies to § 1983 claims applies to § 1985 claims. In Bougher v. University of Pittsburgh, 882 F.2d 74 (3d Cir.1989), the court noted that, like § 1983, "section 1985(3) also seeks to remedy the wrongful deprivation of rights, privileges, and immunities. Because section 1985(3) violations necessarily involve a conspiracy to deprive another of rights, privileges, and immunities, the underlying deprivations sound in tort." Id. at 79. Accordingly, the court held "that section 1985(3) claims are subject to the same limitations period [as section 1983 claims]." Id.; see also Callwood v. Questel, 883 F.2d 272, 274 (3d Cir.1989) (applying personal injury statute of limitations period to § 1985 and § 1981 claims); New Port Largo, Inc. v. Monroe County, 706 F.Supp. 1507, 1514-15 (S.D.Fla.1988) (§ 1983 and § 1985 claims); Alder v. Columbia Historical Soc'y, 690 F.Supp. 9, 14 (D.D.C.1988) (§ 1981 and § 1985(3) claims); Marquis v. United States Sugar Corp., 652 F.Supp. 598, 602 (S.D. Fla.1987) (§ 1981 and § 1985(3) claims); Salahuddin v. Coughlin, 647 F.Supp. 49, 51 (S.D.N.Y.1986) (§ 1981, § 1983 and § 1985(3) claims).
 
 
 25
 We adopt the reasoning of these courts. An action under § 1985(3) alleging a conspiracy to deprive a person of constitutional rights is designed to remedy the same types of harms as the deprivations actionable under § 1983. Accordingly, we hold that suits under § 1985(3) are also best characterized as personal injury actions and are governed by the same statute of limitations as actions under § 1983. In this case, therefore, the applicable statute is the one-year period of Cal.Civ.Proc.Code § 340(3).
 
 
 26
 C. Application of the Statute of Limitations
 
 
 27
 The McDougals' claims all arose prior to the Supreme Court's decision in Wilson. They contend that their claims should be measured by the pre-Wilson, three-year period of limitations instead of the one-year, post-Wilson period. We disagree.
 
 
 28
 In Usher, we were confronted with the problem of whether the new, shorter limitations period under Wilson applied retroactively to bar such claims. Concerned that plaintiffs who had relied on the longer time limit in effect at the time their claims for relief accrued would be prejudiced by the application of a shortened limitations period, we held that
 
 
 29
 in states such as California, where the effect of Wilson v. Garcia is to shorten the limitation period for 42 U.S.C. § 1983 actions, the limitation period for causes of action arising prior to Wilson shall be either (1) the pre-Wilson period, commencing at the time the cause of action arises, or (2) the post-Wilson period, commencing with the Wilson decision, whichever expires first. Thus, in California, the applicable statute of limitations is either three years from the time the cause of action arises or one year from Wilson, depending on which period expires first.
 
 
 30
 828 F.2d at 561; see also Kelly v. Burlington Northern R.R. Co., 896 F.2d 1194, 1199 (9th Cir.1990) (adopting analogous retroactivity rule in labor context).
 
 
 31
 This formula is designed to ensure that a plaintiff's cause of action will not be cut off unfairly by applying a new one-year statute of limitations retroactively. "At the same time, the rule does not grant a plaintiff any greater time to file after the announcement than the time permitted under the new limitations period." Kelly, 896 F.2d at 1199. Usher therefore ensures plaintiffs the amount of time remaining on the original limitations period, or one year from the Wilson decision, whichever expires first.
 
 
 32
 In this case, the McDougals' claims arose prior to the Wilson decision, but the limitations period was tolled during the pendency of state court litigation. The parties agree that this tolling could have lasted until March 4, 1988, when the California Court of Appeal rendered its decision concerning the Simpson Well property. The question before us is whether the limitations period on the date the tolling ended was the pre-Wilson, three-year period or the post-Wilson, one year period. Because the post-Wilson one-year period would expire first, that is the proper one to apply. Usher, 828 F.2d at 561. The McDougals are not entitled to "any greater time" to file. Kelly, 896 F.2d at 1199.
 
 
 33
 Additionally, to allow the McDougals the longer limitations period would be to grant them a windfall. A plaintiff whose cause of action is not tolled at all has at most one year from the date of the Wilson decision to file an action. The McDougals are entitled to the same one-year period, only commencing from the time all equitable tolling has ended. Moreover, well before the time the tolling of the limitations period ended in 1988, Wilson and decisions interpreting it had established that the proper statute of limitations period for § 1983 actions in California was one year. Thus, application of this period will not unfairly preclude the McDougals' claim.
 
 
 34
 For these reasons, the McDougals could have brought their § 1983 and § 1985 claims no later than March 4, 1989, one year after the tolling period expired. Because they filed their complaint on October 3, 1989, these claims are barred.
 
 
 35
 The McDougals attempt to avoid this result by arguing that the County's violations are "continuing." We reject this argument because the McDougals allege wrongful acts which took place as early as 1972 and none which occur after 1985. The "continuing violation doctrine is of no assistance or applicability, because mere 'continuing impact from past violations is not actionable. Continuing violations are.' " Williams v. Owens-Illinois, Inc., 665 F.2d 918, 924 (9th Cir.) (quoting Reed v. Lockheed Aircraft Corp., 613 F.2d 757, 760 (9th Cir.1980)), cert. denied, 459 U.S. 971, 103 S.Ct. 302, 74 L.Ed.2d 283 (1982).
 
 III
 
 36
 The McDougals' third claim for relief is for inverse condemnation.[5] They allege that the designation of their property as a floodway and the imposition of an "overly burdensome and physically impossible" requirement of obtaining a verified ground water model in order to receive a conditional use permit deprive them of all viable economic use of the Clifford Well property. Their complaint also alleges that the County's actions were not taken to advance any legitimate interest but rather were designed to retaliate against them and prevent them from selling water to Mexico or otherwise using their property. They seek just compensation for the taking of their property.[6]
 
 
 37
 The McDougals concede the necessity of the flood ordinance and its intention to protect lives and property. Instead of a facial challenge to the ordinance, they argue that as applied to their property the flood ordinance, in conjunction with other County actions, operates to deny them all economically viable use.
 
 
 38
 The County argues that a flood control ordinance does not constitute a taking and that, because the stated purpose of the ordinance is to protect the public health and safety, no compensation is required even if the McDougals are deprived of all use of their property. For this proposition the County relies on the decision of the California Court of Appeal, on remand from the Supreme Court, in First English Evangelical Lutheran Church v. County of Los Angeles, 210 Cal.App.3d 1353, 258 Cal.Rptr. 893 (1989), cert. denied, --- U.S. ----, 110 S.Ct. 866, 107 L.Ed.2d 950 (1990), which suggests that all uses of property may be constitutionally prohibited under a municipality's power to protect public safety.
 
 
 39
 The district court agreed. It held that, "accepting the [McDougals'] allegations that the County's flood ordinance denied them all economically viable uses of their land, there would still be no taking if the flood ordinance was passed to substantially advance a legitimate state interest." McDougal v. County of Imperial, Civil No. 89-1488-E, Memorandum Decision and Order at 10 (March 22, 1990). The court began its analysis with the standard set by the Supreme Court in Agins v. City of Tiburon, 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980):
 
 
 40
 The application of a general zoning law to particular property effects a taking if the ordinance does not substantially advance legitimate state interests or denies an owner economically viable use of his land.
 
 
 41
 Id. at 260, 100 S.Ct. at 2141 (citations omitted). It then interpreted other Supreme Court opinions, in particular First English Evangelical Lutheran Church v. County of Los Angeles, 482 U.S. 304, 316, 107 S.Ct. 2378, 2386, 96 L.Ed.2d 250 (1987), as "clearly" indicating that the County might avoid " 'the conclusion that a compensable taking had occurred by establishing that the denial of all use was insulated as a part of the State's authority to enact safety regulations.' " Memorandum Decision and Order at 9 (quoting First English, 482 U.S. at 313, 107 S.Ct. at 2384 (footnote omitted)). The district court also noted the similar interpretation of the California appellate court on remand in First English, 210 Cal.App.3d at 1366, 258 Cal.Rptr. 893, and concluded that a "municipality may deprive an owner of 'all uses' of his property without compensation if the municipality is advancing a legitimate state interest." Memorandum Decision and Order at 10. Because the McDougals conceded the necessity of the flood ordinances and their purpose to protect lives and property, the court concluded they had failed to show that the County's actions could be considered a taking.
 
 
 42
 We cannot agree that any legitimate purpose automatically trumps the deprivation of all economically viable use, such that whenever a regulation has a health or safety purpose, no compensation is ever required even if the land owner is thereby denied all use of his property. We read the Supreme Court as requiring us to balance the strength of the public interest against the severity of the private deprivation. See, e.g., Agins, 447 U.S. at 260-61, 100 S.Ct. at 2141-42 ("Although no precise rule determines when property has been taken, the question necessarily requires a weighing of private and public interests."). By the same token, we do not read either First English opinion as holding that any legitimate state interest insulates the state from takings exposure. Instead, we believe that a court is required to consider the nature as well as the legitimacy of the state's interest together with the nature and extent of its impact on the owner's use of his land.
 
 
 43
 This can seldom be done on the pleadings.[7] As we have said,
 
 
 44
 This admonition [against 12(b)(6) dismissal] is perhaps nowhere so apt as in cases involving claims of inverse condemnation where the Supreme Court itself has admitted its inability 'to develop any "set formula" ' for determining when compensation should be paid, Penn Central Transportation Co. v. New York City, 438 U.S. 104, 124, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978), resorting instead to 'essentially ad hoc, factual inquiries' to resolve this difficult question. MacDonald, Sommer & Frates v. Yolo County, 477 U.S. 340, [350-51], 106 S.Ct. 2561, 2566-67, 91 L.Ed.2d 285 (1986); Kaiser Aetna v. United States, 444 U.S. 164, 175, 100 S.Ct. 383, 390, 62 L.Ed.2d 332 (1979). While dismissal of a complaint for inverse condemnation is not always inappropriate, such a dismissal must be reviewed with particular skepticism to assure that plaintiffs are not denied a full and fair opportunity to present their claims.
 
 
 45
 Hall v. City of Santa Barbara, 833 F.2d 1270, 1274 (9th Cir.1986), cert. denied, 485 U.S. 940, 108 S.Ct. 1120, 99 L.Ed.2d 281 (1988); see also Moore v. City of Costa Mesa, 886 F.2d 260, 262 (9th Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 2588, 110 L.Ed.2d 269 (1990).
 
 
 46
 In addition to having their charge of total deprivation disregarded, dismissal in this case prevents the McDougals from adducing evidence of illegitimate purpose and from showing that the regulatory burdens imposed on their property bear no reasonable relationship to the County's legitimate concern for flood control. See Penn Central Transportation Co. v. New York City, 438 U.S. 104, 127, 98 S.Ct. 2646, 2660, 57 L.Ed.2d 631 (1978) ("a use restriction on real property may constitute a 'taking' if not reasonably necessary to the effectuation of a substantial public purpose"). These allegations must be taken as true, and we believe the McDougals are entitled to try to prove them.
 
 A. The Takings "Test" After First English
 
 47
 In First English, as here, the landowner sought compensation for a taking wrought by a flood control ordinance which allegedly deprived it of all use of its property. The only question before the Court was whether the fifth amendment requires compensation for a regulatory taking, no matter how temporary, or whether non-monetary relief is constitutionally sufficient. The municipality nevertheless argued that the Court should independently evaluate the adequacy of the landowner's allegation that the challenged ordinance denies it of "all use of Lutherglen." In that context, the Court remarked:
 
 
 48
 However 'cryptic'--to use appellee's description--the allegations with respect to the taking were, the California courts deemed them sufficient to present the issue. We accordingly have no occasion to decide whether the ordinance at issue actually denied appellant all use of its property or whether the county might avoid the conclusion that a compensable taking had occurred by establishing that the denial of all use was insulated as a part of the State's authority to enact safety regulations. See, e.g., Goldblatt v. Hempstead, 369 U.S. 590, 82 S.Ct. 987, 8 L.Ed.2d 130 (1962); Hadacheck v. Sebastian, 239 U.S. 394, 36 S.Ct. 143, 60 L.Ed. 348 (1915); Mugler v. Kansas, 123 U.S. 623, 8 S.Ct. 273, 31 L.Ed. 205 (1887).
 
 
 49
 First English, 482 U.S. at 313, 107 S.Ct. at 2384-85. The district court and the County read this remark as indicating that the County's flood control ordinance, being within its authority to enact safety regulations, cannot constitute a taking for which compensation is due. We do not read it this way. Rather than articulating a new rule that the exercise of police power may never constitute a compensable taking, the Court was explaining why it had no call to resolve the takings claim on the merits before reaching the question of remedy.
 
 
 50
 The Court consistently has looked at both the public and private ends in determining whether land-use regulation effects a taking. Writing for the Court in Agins, Justice Powell traced the standard of weighing public and private interests to the seminal decision in Euclid v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926), in which zoning laws were upheld because "[t]hey bore a substantial relationship to the public welfare, and their enactment inflicted no irreparable injury upon the landowner." Agins, 447 U.S. at 261, 100 S.Ct. at 2141 (citing Euclid, 272 U.S. at 395-97, 47 S.Ct. at 121-23). The Court said the same thing again in Nollan v. California Coastal Commission, 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987): "We have long recognized that land-use regulation does not effect a taking if it 'substantially advance[s] legitimate state interests' and does not 'den[y] an owner economically viable use of his land.' " Id. at 834, 107 S.Ct. at 3141 (quoting Agins, 447 U.S. at 260, 100 S.Ct. at 2141).
 
 
 51
 To hold that a legitimate public interest alone precludes a taking without regard to the degree of private deprivation turns the Court's balancing of interests into a bright-line test for which there is no precedent. The Court's own disclaimers make this clear. See, e.g., United States v. Riverside Bayview Homes, 474 U.S. 121, 126, 106 S.Ct. 455, 458, 88 L.Ed.2d 419 (1985) ("We have never precisely defined those cicumstances" when governmental land-use regulations amount to a taking); Penn Central Transp. Co., 438 U.S. at 124, 98 S.Ct. at 2659 (takings analysis involves "essentially ad hoc, factual inquiries"); Goldblatt v. Town of Hempstead, 369 U.S. 590, 594, 82 S.Ct. 987, 990, 8 L.Ed.2d 130 (1962) ("no set formula to determine where regulation ends and taking begins"); Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 416, 43 S.Ct. 158, 160, 67 L.Ed. 322 (1922) (takings determination is "a question of degree--and therefore cannot be disposed of by general propositions").
 
 
 52
 Ever since Pennsylvania Coal, the Court has embraced "[t]he general rule ... that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." 260 U.S. at 416, 43 S.Ct. at 160.[8] See, e.g., First English, 482 U.S. at 316, 107 S.Ct. at 2386 (characterizing this principle as "established doctrine"). In Agins itself, having concluded that the zoning ordinances substantially advanced legitimate governmental goals, the Court in the next breath discussed detriment to the developer, noting that the ordinances neither prevented the best use of the land nor extinguished a fundamental attribute of ownership. Agins, 447 U.S. at 261-62, 100 S.Ct. at 2141-42. That the Court considered the degree of deprivation in addition to the presence of a legitimate purpose is the best evidence of what Agins means, and how we, in turn, are meant to resolve takings questions.
 
 
 53
 Even in those cases where the activity restrained was akin to a public nuisance and the state's interest was admittedly substantial, the Court has gone on to weigh the claimant's showing of diminution of value to his property. See, e.g., Keystone Bituminous Coal Ass'n v. DeBenedictis, 480 U.S. 470, 492-93, 107 S.Ct. 1232, 1245-46, 94 L.Ed.2d 472 (1987). The Court has held that a broad range of regulatory purposes constitute "legitimate state interests." See Nollan, 483 U.S. at 834-835, 107 S.Ct. at 3147-48. It has also recognized that "the nature of the State's action is critical in takings analysis," Keystone, 480 U.S. at 488, 107 S.Ct. at 1243; and it has frequently resolved the issue of compensation adversely to the claimant in cases where the use is illegal, or a public nuisance. See, e.g., Mugler v. Kansas, 123 U.S. 623, 8 S.Ct. 273, 31 L.Ed. 205 (1887); Hadacheck v. Sebastian, 239 U.S. 394, 36 S.Ct. 143, 60 L.Ed. 348 (1915); Goldblatt, 369 U.S. 590, 82 S.Ct. 987; and cases cited in Keystone, 480 U.S. at 492 n. 22, 107 S.Ct. at 1245 n. 22. In such cases, prohibiting injurious use "does not disturb the owner in the control or use of his property for lawful purposes, nor restrict his right to dispose of it, but is only a declaration by the state that its use by any one, for certain forbidden purposes, is prejudicial to the public interests." Mugler, 123 U.S. at 669, 8 S.Ct. at 301. However, the Court has never said that the state's interest is the only critical factor, or held that there is no compensable taking if an ordinance advances any legitimate state interest and the owner is denied all use of his property.[9]
 
 
 54
 In short, the Court has yet to adopt a per se rule in takings cases. It has never looked only at the government's interest--stopping there, if it is legitimate. Accordingly, we see no basis in the Court's takings jurisprudence for absolving the County of its obligation to pay compensation for the taking of property solely on account of the legitimacy of its purpose, without regard either to its substantiality or to the severity of the owners' deprivation. While the "public use" requirement of the takings clause may be coextensive with the exercise of the police power, Keystone, 480 U.S. at 491 n. 20, 107 S.Ct. at 1245 n. 20; Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1014, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984), the "just compensation" requirement is not.
 
 
 55
 Nor do we read the California Court of Appeal analysis on remand in First English as supporting dismissal of the McDougals' claim. To be sure, the court did say thatthe Supreme Court majority [in First English ] clearly stated the land use regulation involved in this case--Interim Ordinance 11,855--would not constitute a compensable 'taking' if the regulation did not deprive First English of 'all uses' of its property or even assuming it prohibited 'all uses' of that property if that deprivation of 'all uses' promoted public safety. Under this formulation First English would not be entitled to compensation even if Interim Ordinance 11,855 deprived it of 'all uses' of Lutherglen if that prohibition substantially advances the interest in public health and safety.
 
 
 56
 First English, 210 Cal.App.3d at 1366, 258 Cal.Rptr. 893. Yet even assuming this is an accurate description of the Chief Justice's opinion, which we do not believe it is,[10] these statements are nevertheless dicta because the court found the ordinance on its face did not deny First English "all use" of the property. Id. at 1367, 258 Cal.Rptr. 893.[11] Further, the court's comments are not persuasive here because, unlike the McDougals, First English made only a facial challenge to the ordinance and alleged no illegitimate purpose undermining the high public interest in preventing death and injury. The McDougals' complaint posits both a denial of all use and an illegitimate public purpose. In any event, how the California appellate court actually analyzed the case tracks exactly with the balancing test we believe the Supreme Court expects us to apply. As it concluded:
 
 
 57
 On balance, the public benefits this regulation confers far exceed the private costs it imposes on the individual property owner (especially after factoring in the public benefits this property owner shares). These are the considerations the Supreme Court deemed to control the decision whether government should be compelled to award compensation when its regulations drastically limit the uses of private property. [Citing Agins, 447 U.S. at 260-62, 100 S.Ct. at 2141-43]. On one side of the scale the zoning restriction 'substantially advances' the highest possible public interest--the prevention of death and injury both on and off appellant's property. On the other side of the scale, appellants and their future campers not only share in this public benefit but are still left with some permissible uses of the property. The fact the zoning restrictions necessary to the preservation of life and health may cause a diminution in the use and economic value of this property does not create an automatic legal entitlement to compensation for that loss of use and value. [Citing Goldblatt, 369 U.S. 590, 82 S.Ct. 987; Hadacheck, 239 U.S. 394, 36 S.Ct. 143; Keystone, 480 U.S. 470, 107 S.Ct. 1232]
 
 
 58
 Id. 210 Cal.App.3d at 1372, 258 Cal.Rptr. 893.
 
 
 59
 We therefore believe the district court went a step beyond the bounds of authority in failing to weigh both the public and private interests involved before dismissing the McDougals' takings claim.[12]
 
 B. Allegations of Illegitimate Purpose
 
 60
 Even though the McDougals concede that the flood control ordinance serves a legitimate purpose, their complaint avers that the County acted "to retaliate against [them] and halt the sale of water to Mexico and not in consideration of potential flooding in the area." Complaint, p LVII at 18 & p XXXVI at 12. The district court held that the McDougals "failed to establish that the County's actions do not substantially advance a legitimate state interest." However, they have no obligation to "establish" the illegitimacy of the County's motivations on a motion to dismiss. Likewise, the McDougals allege that the requirements for a conditional use permit and a verified ground water model were impossible to satisfy and did not relate to legitimate concerns of the County, but the district court's order gives no consideration to these charges.
 
 
 61
 The legitimacy of the public interest involved, how much it is furthered by the regulatory actions at issue, the extent of the public benefit obtained or expected, and the degree that the McDougals' property rights and reasonable investment-backed expectations have been impaired are all factors which lie at the heart of the takings inquiry. These things typically cannot be assessed properly without a factual record. See Hall v. City of Santa Barbara, 833 F.2d 1270, 1282 (9th Cir.1986), cert. denied, 485 U.S. 940, 108 S.Ct. 1120, 99 L.Ed.2d 281 (1988). While we express no opinion on the merits of the McDougals' claim, we cannot say at this stage of the proceedings that they will be unable to prove any set of facts that will entitle them to compensation.
 
 
 62
 Taking the allegations of the complaint as true, as we must, the County, for illegitimate reasons, has deprived the McDougals of all economically viable uses of their property in designating it a floodway and in denying their application for a conditional use permit for retaliatory reasons. These allegations sufficiently state a claim for compensation for a regulatory taking to survive a motion to dismiss.
 
 IV
 
 63
 The County asks us to sanction the McDougals for bringing a frivolous appeal and for an alleged disregard of the law. This appeal is not wholly without merit and the McDougals' claims are not frivolous. We decline to impose sanctions.
 
 Conclusion
 
 64
 We affirm the district court's dismissal of the § 1983 and § 1985(3) claims on statute of limitations grounds. Because the allegations of the complaint state a claim for inverse condemnation, we reverse the dismissal of this claim and remand to the district court for further proceedings. We also grant the McDougals their costs on appeal under Fed.R.App.P. 39(a).
 
 
 65
 AFFIRMED IN PART; REVERSED and REMANDED IN PART.
 
 
 
 *
 The Honorable James Ware, United States District Judge for the Northern District of California, sitting by designation
 
 
 [1]
 In 1972, the County instituted proceedings against Thomas Clifford, the initial owner of the property, to prevent him from selling water to Mexico. The County claimed these actions violated zoning and groundwater appropriation ordinances. The California courts agreed, determining Clifford's use of the property to be a nonconforming use, but held the County's imposition of a one-year abatement period to be too short
 
 
 [2]
 Appellants' Opening Brief at 13
 
 
 [3]
 The district court analogized the McDougals' § 1985 conspiracy claim to a suit for deprivation of personal rights and concluded that, like the § 1983 claim, it also sounded in tort. It therefore applied the one-year limit for personal injury actions set out in Cal.Civ.Proc.Code § 340(3)
 
 
 [4]
 Usher involved claims under both § 1983 and § 1985, but our discussion of the statute of limitations pertained only to the § 1983 claim, holding that claim to have been timely filed. 828 F.2d at 558-61. In a separate section of the opinion, we determined that the § 1985 claim was adequately pleaded, but we did not mention the statute of limitations. Id. at 561
 
 
 [5]
 We do not consider whether this claim is also barred by the one-year statute of limitations, cf. De Anza Properties X, Ltd. v. County of Santa Cruz, 936 F.2d 1084, 1085 (9th Cir.1991), as the issue has not been properly raised on appeal. It may, of course, be addressed on remand
 
 
 [6]
 After oral argument, we remanded this claim to the district court for the limited purpose of determining whether it was ripe for federal adjudication. The district court concluded that the claim was ripe under the "futility" exception to the requirement that a landowner obtain a "final decision" regarding the application of land use regulations to the affected property. See Del Monte Dunes at Monterey, Ltd. v. City of Monterey, 920 F.2d 1496, 1501 (9th Cir.1990); Hoehne v. County of San Benito, 870 F.2d 529, 534 (9th Cir.1989); Herrington v. County of Sonoma, 834 F.2d 1488 (9th Cir.1987), amended, 857 F.2d 567, 569 (1988), cert. denied, 489 U.S. 1090, 109 S.Ct. 1557, 103 L.Ed.2d 860 (1989); Kinzli v. City of Santa Cruz, 818 F.2d 1449, 1454 (9th Cir.), amended, 830 F.2d 968 (1987), cert. denied, 484 U.S. 1043, 108 S.Ct. 775, 98 L.Ed.2d 861 (1988). We agree
 
 
 [7]
 "It is axiomatic that '[t]he motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted.' " Hall v. City of Santa Barbara, 833 F.2d 1270, 1274 (9th Cir.1986) (citation omitted), cert. denied, 485 U.S. 940, 108 S.Ct. 1120, 99 L.Ed.2d 281 (1988). This is so because a complaint will not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102, 2 L.Ed.2d 80 (1957). All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. Sanders v. Kennedy, 794 F.2d 478, 481 (9th Cir.1986)
 
 
 [8]
 Justice Brandeis argued in dissent that a "restriction imposed to protect the public health, safety or morals from dangers threatened is not a taking." 260 U.S. at 417, 43 S.Ct. at 161. The County's argument is the same here, but Pennsylvania Coal has not been overruled. In his dissent in San Diego Gas & Electric Co. v. San Diego, 450 U.S. 621, 101 S.Ct. 1287, 67 L.Ed.2d 551 (1981), Justice Brennan, reaching the merits of the case, observed that the proposition that a city's exercise of its police power, however arbitrary or excessive, cannot as a matter of federal constitutional law constitute a 'taking' within the meaning of the fifth amendment "flatly contradicts clear precedents of this Court." Id. at 647, 101 S.Ct. at 1302 (Brennan, J., dissenting)
 
 
 [9]
 The cases cited by the Chief Justice after the remark in First English upon which the County and district court rely underscore this point. In Goldblatt and Hadacheck, a nuisance was restrained; in Mugler, illegal activity. Yet in none of these cases was all use of property prohibited
 
 
 [10]
 See discussion supra at 676-77
 
 
 [11]
 As the court stated, "[w]e need not address the ultimate question--is the public interest at stake in this case so paramount that it would justify a law which prohibited any future occupancy or use of appellant's land." First English, 210 Cal.App.3d at 1370, 258 Cal.Rptr. 893 (emphasis in original)
 
 
 [12]
 Our cases are to the same effect. See, e.g., Moore v. City of Costa Mesa, 886 F.2d 260, 263 (9th Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 2588, 110 L.Ed.2d 269 (1990) (affirming dismissal of a takings claim on a Rule 12(b)(6) motion, but noting "[i]t is significant that there are no allegations that all Moore's property was taken, or that he was denied all or substantially all of [the property's] economically viable use")